Michael L. Slack (Texas Bar No. 18476800)
mslack@slackdavis.com
*Pro Hac Vice Anticipated*
John R. Davis (Cal. Bar No. 308412)
jdavis@slackdavis.com
*Pro Hac Vice Anticipated*
SLACK & DAVIS, LLP
2705 Bee Cave Road, Suite 220
Austin, TX 78746

Thomas J. Brandi (Cal. Bar No. 53208)
tjb@brandilaw.com
Brian J. Malloy (Cal. Bar No. 234882)
bjm@brandilaw.com
THE BRANDI LAW FIRM
354 Pine Street, Third Floor
San Francisco, CA 94104
415-989-1800

*Attorneys for Plaintiff David Thornton*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID THORNTON, individually and on behalf of a class of similarly situated persons, | Case No. _____ |
| Plaintiff, | |
| vs. | CLASS ACTION COMPLAINT |
| LYFT, INC., a Delaware Corporation, | |
| Defendant. | JURY DEMAND |

## CLASS ACTION COMPLAINT

Plaintiff, David Thornton, individually and on behalf of all others similarly situated (the "Class"), bring this WARN Act class action against Defendant Lyft, Incorporated ("Lyft" or "Defendant"), and alleges, based on personal knowledge, investigation, and information and belief as to all other matters, as follows:

## I.   PARTIES

1.   Plaintiff David Thornton is a citizen of Texas, domiciled in Round Rock, Texas. Plaintiff Thornton drove as a Lyft Driver starting in October 2015. As a result of Lyft's mass layoff and/or plant closing of its Austin operations, Plaintiff Thornton's full time employment with Lyft has terminated.

2.   Defendant Lyft, Inc., is a Delaware corporation with its headquarters and principal place of business located in San Francisco, California.

## II.   JURISDICTION & VENUE

3.   The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, specifically the Worker Adjustment and Retraining Notification (WARN) Act, 29 U.S.C. § 2102 *et seq*. The WARN Act grants federal district courts original jurisdiction over WARN Act cases, 29 U.S.C. § 2104(a)(5).

4.   Venue is proper in this district pursuant to: 28 U.S.C. § 1391(b)(1) because Defendant Lyft resides in this District; § 1391(b)(2) because "a substantial part of the events or omissions giving rise to the claim occurred" in this District; and § 1391(b)(3) because Defendant Lyft is subject to the personal jurisdiction of this Court. Venue is also proper pursuant to 29 U.S.C. § 2104(a)(5) because Defendant Lyft "transacts business" in this District.

## III.   INTRADISTRICT ASSIGNMENT

5.   This action is appropriately assigned to the San Francisco Division because it is related to a pending case *Cotter v. Lyft, Inc.*, No. 3:13-cv-4065-VC, which is assigned to the San

Francisco Division.

## IV.   FACTUAL ALLEGATIONS

**A.  Defendant Lyft's Austin, Texas Operations**

6. Lyft is a San Francisco, California-based car service promoting itself as a transportation networking company ("TNC"). By means of its mobile application software (the "Lyft App"), Lyft provides a means to enable a person who seeks transportation to a destination via automobile ("Rider(s)") to be picked up by a nearby person who is willing to transport the Rider to his or her destinations via automobile ("Driver(s)").

7. Lyft is the second biggest ride-hailing platform, behind Uber. After a $500 million investment by General Motors in early 2016, Lyft's was valued at approximately $5.5 billion.

8. Lyft began operating in Austin, Texas on or about May 29, 2014, with approximately one hundred (100) Drivers according to Lyft co-founder John Zimmer.

9. As of May 2016, Lyft officials asserted that Lyft had over 10,000 Drivers in Austin.[1]

**B.  The Defeat of Proposition 1 and Defendant Lyft's Termination of Austin Operations**

10. On or about December 17, 2015, Austin City Council voted 9-2 to approve an Ordinance (City Ordinance No. 20151217-075) requiring so-called "transportation network companies" (including Uber and Lyft) to, among other things, subject their drivers to a fingerprint-based criminal background check. To afford affected companies ample time to become compliant, the Ordinance did not become effective until February 1, 2016, and both Uber and Lyft were given twelve (12) months, until February 1, 2017, to gradually phase their

---

[1] Sarah Ashley O'Brien & Jackie Wattles, *Austin Drivers in the Lurch after Uber, Lyft Exit*, CNN: MONEY (May 10, 2016, 8:41 AM), http://money.cnn.com/2016/05/09/technology/austin-uber-lyft-drivers/.

fleets into compliance.

11. Instead of complying with the new Ordinance, Uber and Lyft created a political action committee ("PAC") called Ridesharing Works for Austin. Uber and Lyft invested approximately $8.6 million into the most expensive political campaign in Austin history in an attempt to defeat the Ordinance. Upon information and belief, Defendant Uber gave significant amounts of money went to politically conservative right-wing PACs and individuals described as "experienced Republican operatives" in efforts to both defeat the Ordinance and to personally ridicule and politically attack Austin City Council members in support of the Ordinance, including specifically Austin City Councilwoman and Democrat Ann Kitchen.

12. Having secured the requisite 20,000 petition signatures, a public referendum occurred on Saturday May 7, 2016. Proposition 1 (to repeal the Ordinance and supported by Uber and Lyft) was rejected by Austin voters, 56% of whom voted against Proposition 1.

13. On Monday May 9, 2016, at 5am, Lyft indefinitely terminated its Austin operations.

14. The result is that thousands of Austin Lyft Drivers have lost their jobs and incomes. As stated in the Huffington Post, "the real 'losers' in this situation are the thousands of full-time drivers in Austin who have just been put out of work with less than 48 hours' notice."[2]

15. None of these Drivers was provided any adequate WARN Act notice of Lyft's decision to withdraw from Austin.

C. **Defendant Lyft's Drivers are "Affected Employees" Pursuant to the WARN Act and/or are Employees Pursuant to California Law**

16. The WARN Act contains its own *sui generis* definition of "affected employees"

---

[2] Andrew Watts, *The Real Reason Uber and Lyft Left Austin*, HUFFINGTON POST: BUSINESS (May 10, 2016, 2:09 PM), http://www.huffingtonpost.com/andrew-watts/the-real-reason-uber-and-lyft-left-austin_b_9889406.html.

Class Action Complaint

who are entitled to WARN Act notice. Affected employees are defined as having a reasonable expectation of suffering an employment loss due to a plant closing or mass layoff, 29 U.S.C. § 2101(a)(5), while an "employment loss" means any one of the following: (A) termination without cause, voluntary departure, or retirement; (B) a layoff exceeding 6 months; or (C) a reduction in work hours of more than 50 percent during each month of any 6-month period, § 2101(a)(6).

17. Plaintiff and putative class members, as defined *infra*, are "affected employees" because they suffered an "employment loss" as a result of Lyft's "plant closing" and/or "mass layoff" in Austin, Texas.

18. Moreover, Plaintiff and putative class members are employees of Defendant Lyft pursuant to common law:

a) Defendant Lyft, through its policies and procedures, exhibits control over Lyft's Drivers and the manner and means by which Drivers provide Lyft's service. Those policies and procedurals include, but are not limited to, procedure manuals, instructional videos, control over Driver scheduling, the authority to set prices for the service;

b) Defendant Lyft, through its policies and procedures, maintains the right to discharge Drivers at will, without cause. As stated in Lyft's applicable February 8, 2016 Terms of Service, "[Lyft] may suspend or deactivate your User account (either as a Rider and/or Driver) … at any time, for any reason ….";

c) Defendant Lyft and its Drivers are not engaged in a distinct occupation or business. Rather, Defendant Lyft's Drivers implement and are integral to Lyft's core business of providing ride-hailing services;

d) Defendant Lyft's Drivers are not required to utilize specialized skills in performing services for Lyft;

e) Lyft supplies critical instrumentalities of performing the service (i.e., the Lyft App and other trademarks);

f) Drivers perform services for Lyft for an indefinite period of time; and,

g) The work performed by Lyft's Drivers is an integral component of Lyft's regular business operations.

19. Indeed, just recently, on or about May 11, 2016, Lyft entered into a $27 million preliminary settlement of class allegations that Lyft's Drivers constitute employees (and not independent contractors) and are thus entitled to employee benefits under California law.

20. Prior to the settlement, the court presiding over that matter had found that pursuant to California law "a reasonable [fact-finder] could conclude that the plaintiff Lyft drivers were employees." Lyft's February 8, 2016 Terms of Service provide that "[t]his Agreement shall be governed by the laws of the State of California without regard to choice of law principles."

21. Defendant Lyft's Austin Drivers constitute "affected employees" or "aggrieved employees" pursuant to the WARN Act as well as employees pursuant to California law.

**D. Defendant Lyft's Violations of the WARN Act**

22. The Worker Adjustment and Retraining Notification (WARN) Act requires that certain employers give employees sixty (60) days notice prior to effectuating either a "plant closing" or "mass layoff" as those terms are defined and construed in the WARN Act and related U.S. Department of Labor ("DOL") regulations.

23. A violation of the WARN Act occurs when an employer does not provide the proper notice within the proper timeframe. What constitutes proper notice is described in the WARN Act, DOL regulations, and interpretative case law. At a minimum, however, such notice must contain a reference to the WARN Act and be delivered directly from the employer to the employee (or his or her representative).

24. For WARN Act violations, Congress, as a matter of continuing employment policy favoring collective action, has specifically provided a statutory right that class or representative actions be available to WARN Act litigants, to be prosecuted in federal district

Class Action Complaint

courts. 29 U.S.C. § 2104(a)(5).

25. The principal remedy for WARN Act violations is back pay for up to sixty (60) days for all eligible employees. Aggrieved employees are also entitled to benefits and covered medical expenses.

26. Defendant Lyft is an "employer" as that term is defined in the WARN Act. Notably, not even accounting for alleged Driver employees, Lyft's LinkedIn page states that Lyft has between "501-1,000 employees."

27. Defendant Lyft's Austin Drivers constitute "affected employees" or "aggrieved employees" pursuant to the WARN Act as well as employees pursuant to California law.

28. Defendant Lyft's termination of its Austin operations constitutes a covered event under the WARN Act as either a "plant closing" or a "mass layoff" as those terms are defined in the WARN Act.

29. Defendant Lyft has not, including up to the present, provided any form of WARN Act notice to its Austin Drivers.

E. **Allegations Regarding Named Plaintiff**

30. Plaintiff David Thornton began driving for Lyft in Austin, Texas, on or about October 20, 2015.

31. Plaintiff David Thornton primarily provided rides within Austin city limits, in and around downtown, and to and from Austin-Bergstrom International Airport.

32. Plaintiff David Thornton's Lyft Driver rating was 4.5 stars and had not been deactivated or threatened with deactivation by Lyft at any point.

33. Between October 19, 2015 and May 8, 2016, Plaintiff David Thornton averaged approximately 38 hours per week driving for Lyft.

Class Action Complaint

34. Since Lyft's withdrawal from Austin, Plaintiff Thornton has been looking for other sources of income.

35. Plaintiff Thornton was not provided WARN Act notice by Lyft at any point regarding Lyft's decision to effectuate a "plant closing" or "mass layoff" in Austin.

36. Plaintiff Thornton is entitled to 60 days' back pay and benefits.

### V.   CLASS REPRESENTATION ALLEGATIONS

37. Plaintiff brings this action pursuant to 29 U.S.C. § 2104(a)(5) and pursuant to Federal Rules of Civil Procedure 23(b)(2) and (b)(3) on behalf of himself and on behalf of the Class defined below (subject to modification). The proposed Class is:

> **All persons with an active Lyft account as of May 9, 2016, who operated as a Lyft Driver in the affected Austin area between May 9, 2013 and May 9, 2016.**

38. Excluded from the Class are: (1) Drivers who deactivated or had their accounts deactivated prior to May 9, 2016; (2) Drivers who were terminated, resigned, or retired prior to May 9, 2016; (3) Defendants and their officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries and assigns, and entities in which Defendants have a controlling interest; (4) Governmental entities; (5) Class counsel; and (6) all judicial officers and administrative staff presiding over this matter.

39. Said definitions and/or exclusions may be further defined or amended by additional pleadings, evidentiary hearings, class certification motions and/or hearings, and orders of this Court.

40. **Numerosity**. The members of the Class are so numerous that separate joinder of each member is impracticable. Plaintiff does not know the exact number of members in the Class, but based upon information and belief, Plaintiff reasonably believes that Class Members

number at a minimum in the thousands. In fact, representatives for Lyft have stated that Lyft had 10,000 Austin Drivers as of May 9, 2016.

41. **Commonality**. The claims of Plaintiff raise questions of law or fact common to the questions of law or fact raised by the claims of each member of the Class. Plaintiff's claims arise from the same event or set of events that gives rise to the claims of the Class members. The questions of law and fact common to Plaintiff and the Class predominate over questions affecting only individual Class members, and include, but are not limited to, the following:

- Is Defendant Lyft an "employer" pursuant to the WARN Act?
- Are Defendant Lyft's Drivers "affected employees" or "aggrieved employees" pursuant to the WARN Act?
- Are Defendant Lyft's Drivers employees under California common law?
- Did Lyft's withdrawal from Austin constitute a "plant closing" as defined in the WARN Act?
- Did Lyft's withdrawal from Austin constitute a "mass layoff" as defined in the WARN Act?
- Is the affected Austin area considered a "single site of employment" as defined in the WARN Act?
- Did Lyft provide legally sufficient WARN Act notice to its Drivers?
- When should have Lyft provided WARN Act notice to its Drivers?
- If Lyft did provide WARN Act notice to its Drivers, is Lyft entitled to claim any basis for a reduction in the notice period?
- What is an appropriate classwide formula by which to calculate individual class members' damages upon submission of a claim?

42. **Typicality**. The claims of Plaintiff are typical of the claims of each member of the Class. Plaintiff's and Class Members' claims all arise from the same event or set of events. All Class Members, including Plaintiff, have the same or similar injury in that Defendants failed to comply with the WARN Act.

43. **Adequacy of Representation**. Plaintiff can fairly and adequately protect and represent the interests of each member of the Class. Plaintiff fits within the class definition and Plaintiff's interests do not conflict with the interest of the members of the Class Plaintiff seeks to

represent. Plaintiff is represented by experienced and able attorneys at the law firms of Slack & Davis, LLP, of Austin, Texas, and The Brandi Law Firm, of San Francisco, California. The undersigned Class Counsel have litigated numerous class actions and other complex cases, including against Lyft's major competitor, Uber Technologies, Inc., and intend to prosecute this action vigorously for the benefit of the entire Class. Plaintiff and Class Counsel can and will fairly and adequately protect the interests of all members of the Class.

44. **Fed. R. Civ. P. 23(b)(2) Factors**. Defendants acted on grounds generally applicable to the entire Class, by terminating their employment in the same manner, thereby making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Class as a whole. The prosecution of separate actions by individual Class Members would create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for Defendants.

45. Injunctive relief is necessary to prevent Defendant Lyft from continuing to deprive its employee Drivers of their statutory rights. Money damages alone will not afford adequate and complete relief, and injunctive relief is necessary to restrain Defendants from continuing to systematically and uniformly and incorrectly disclaim any employer obligations with respect to its Drivers.

46. **Fed. R. Civ. P. 23(b)(3) Factors**. Common issues of fact and law predominate in this matter and the class action method is superior to other methods available for handling this litigation. Indeed, the WARN has been described in judicial opinions as "contemplat[ing] enforcement by class action."

47. **Common issues predominate**. As set forth above, common issues of fact and law predominate over individualized issues because Defendants have violated the WARN Act by

withdrawing from Austin, effectively shutting down its operations and layoff off all its employees in the same manner at the same time. Virtually all issues of liability will be common to the class. Furthermore, to the extent Class Members' damages are individualized, the analysis of each Class Member's measure of damages is similar or identical and is capable of being resolved by application of a common damages formula and/or by the use of a common set of data within the possession of Defendant Lyft.

48.     **Superiority**. Additionally, a class action is superior to other available methods for fair and efficient adjudication of the controversy, and in fact, is a statutory right granted in the WARN Act and/or other employment law statutes including but not limited to the National Labor Relations Act ("NLRA"). The damages sought by each Class Member are such that individual prosecution would prove burdensome and unduly expensive. It would be extremely inconvenient and hardly cost-effective for the members of the Class to effectively redress the wrongs done to them on an individual basis. Even if the members of the Class themselves could afford such individual litigation, such individualized litigation would present an unnecessary burden on the courts.

49.     **Manageability**. The trial and litigation of Plaintiff's claims are manageable. Class members and damages data may be identified through Defendants' own records. Individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendants' systematic and uniform conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

50.     Further, Defendants have acted on grounds generally applicable to the Class,

Class Action Complaint

thereby making final injunctive relief with respect to the Class as a whole appropriate.

51. **Notice to the Class**. Notice to the Class may be made by direct mail, email, and/or publication. Defendant Lyft will have data regarding contact information for each Class Member.

## VI. CAUSES OF ACTION

### A. First Cause of Action: WARN Act Violation

52. Plaintiff repeats and realleges the allegations set forth above, and incorporate the same as if set forth herein at length.

53. Defendant Lyft is an "employer" as defined in the WARN Act.

54. Plaintiff and Class Members are "affected employees" and/or "aggrieved employees" who suffered an "employment loss" as defined in the WARN Act.

55. Plaintiff and Class Members' employment loss was the result of Defendant Lyft's termination of operations in Austin, which act constituted a "plant closing" and/or "mass layoff" as those terms are defined in the WARN Act.

56. Defendant Lyft failed to provide timely or proper (or any) sufficient WARN Act notice to Plaintiff and Class Members.

57. Defendant Lyft is thus liable for up to sixty (60) days back pay, including other benefits, to each "affected employee" or "aggrieved employee."

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and on behalf of the above-defined Class Members request judgment and relief on all causes of action as follows:

- An Order certifying this instant matter as a Class Action;
- Judgment in favor of Plaintiff and the Class, and against Defendant Lyft on Count I;
- Injunctive and/or declaratory relief to the extent available;
- All available statutory damages and penalties pursuant to the WARN Act;
- Pre- and post-judgment interest to the extent available at law;

1
- All costs and attorney's fees pursuant to 29 U.S.C. § 2104(a)(6) or other applicable law.

**JURY TRIAL DEMANDED**

Dated: June 9, 2016

Respectfully Submitted,

|  |  |
|---|---|
| Michael L. Slack (Texas Bar No. 18476800) | /s/ Thomas J. Brandi |
| mslack@slackdavis.com | Thomas J. Brandi (Cal. Bar No. 53208) |
| *Pro Hac Vice Anticipated* | tjb@brandilaw.com |
| John R. Davis (Cal. Bar No. 308412) | Brian J. Malloy (Cal. Bar No. 234882) |
| jdavis@slackdavis.com | bjm@brandilaw.com |
| *Pro Hac Vice Anticipated* | THE BRANDI LAW FIRM |
| SLACK & DAVIS, LLP | 354 Pine Street, Third Floor |
| 2705 Bee Cave Road, Suite 220 | San Francisco, CA 94104 |
| Austin, TX 78746 | 415-989-1800 |
| 512-795-8686 | |
| 512-795-8787 (fax) | |

**Class Action Complaint**